

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 16 2001

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| ADVOCACY, INCORPORATED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | 4:01 - - - 0062 - Y |
| vs. | § | |
| | § | CIVIL ACTION NO._____ |
| TARRANT COUNTY HOSPITAL | § | |
| DISTRICT d/b/a | § | |
| JOHN PETER SMITH HOSPITAL | § | |
| and | § | |
| ANTHONY ALCINI, In His | § | |
| Official Capacity as Chief Executive | § | |
| Officer of John Peter Smith Hospital | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Advocacy, Incorporated complains of Defendant Tarrant County Hospital

District d/b/a John Peter Smith Hospital and Anthony Alcini, in his capacity as Chief

Executive Officer of  John Peter Smith Hospital and related units of the Tarrant County

Hospital District; and their agents, employees, successors and all persons acting in concert

with them at their direction.  In support thereof Plaintiff would respectfully show the Court:

### I. PRELIMINARY STATEMENT

1.     This action seeks injunctive and declaratory relief pursuant to 42 U.S.C. §1983,

Rules 57 and 65,  FRCP, and 28 U.S.C. §2201,  to prevent Defendants from restricting full,

complete, meaningful and timely access by Advocacy, Incorporated to the medical records of Robert Sawin, who died at the John Peter Smith Hospital on or about September 14, 1999, and the medical records of any person who in the future dies at a facility operated by the Defendants, when Advocacy, Incorporated has probable cause to believe that the deceased died from abuse or neglect, as mandated by the Protection and Advocacy for Mentally Ill Individuals Act of 1991 (PAIMI Act), 42 U.S.C. § 10801, *et seq*. Advocacy, Incorporated, seeks records from John Peter Smith Hospital related to Robert Sawin, along with any records pertaining to him from other units of the Tarrant County Hospital District, including, but not limited to, records from Trinity Pavilion.

## II.  JURISDICTION

2.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 2201, because Plaintiff is seeking redress of the deprivation, under color of State law, statute, ordinance, custom or usage of its civil rights, privileges and immunities secured by the Constitution of the United States and Acts of Congress.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 2201. Defendants reside in this district, and the events and omissions complained of occurred in this district.

## III.  PARTIES

4.      Advocacy, Incorporated ("Advocacy") is a nonprofit Texas corporation authorized by Congressional mandate to protect and advocate the civil rights of persons with disabilities.  Advocacy was, and is, designated by the State of Texas to perform the above-

referenced Congressional mandate pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 6041-6043, and the PAIMI Act, 42 U.S.C. §§ 10802-03. Advocacy spends considerable time and resources monitoring conditions at public and private institutions, including John Peter Smith Hospital, and in advocating for the rights of people residing in those institutions.

5.     Defendant Tarrant County Hospital District is a not-for-profit organization created under authority of Chapter 281, Texas Health & Safety Code, to provide preventative and primary care for all Tarrant County residents. It receives monies from various sources, including tax revenues from the County of Tarrant. It does business as John Peter Smith Hospital ("JPSH"), and in that capacity. is the designated county hospital system for Tarrant County, and provides general medical and full emergency room services, especially for indigent and insurance-poor persons. Defendant JPSH is an unincorporated entity of Tarrant County which can be served through its Chief Executive Officer, Anthony Alcini, at John Peter Smith Hospital, 1500 S. Main Street, Fort Worth, Texas 76104.

6.     Anthony Alcini is currently the duly appointed Chief Executive Officer of John Peter Smith Hospital. In that capacity, he serves as the Chief Executive and Administrative Officer and he is obligated to observe and execute various statutes and regulations. Defendant Alcini resides in Tarrant County and may be served process at John Peter Smith Hospital, 1500 S. Main Street, Fort Worth, Texas 76104.

## IV.  FACTS

7.     Because the State of Texas receives federal funds under the PAIMI Act, *see* 42 U.S.C. § 10801 *et. seq.*, it is required to establish systems "which are designed to – protect and advocate the rights of individuals with mental illness; and investigate incidents of abuse and neglect of individuals with mental illness ..." Advocacy has been designated by the State of Texas to be that system.

8.     On or about March 23, 2000, Advocacy received a complaint from the Health Care Financing Administration ("HCFA") stating that Robert Sawin had died while residing at JPSH and that the death was a result of a restraint or seclusion.  (Attached as Exhibit A). The complaint from HCFA meets the definition of abuse or neglect as defined by 42 U.S.C. § 10802.

9.     On or about April 17, 2000, Nestor Presas, an employee from Advocacy, contacted JPSH requesting the release of Robert Sawin's records to Advocacy based on the HCFA complaint and probable cause to believe that there had been abuse or neglect as defined in accordance with 42 U.S.C. § 10805(a)(4)(B).  (Attached as Exhibit B).

10.    On or about April 26, 2000, the Assistant District Attorney for the Tarrant County Hospital District, J.O. Khayan Williams, responded to Mr. Presas in writing.  The release of Robert Sawin's records was refused and Mr. Williams, in his letter, requested information regarding Advocacy and its authority to obtain medical records of individuals in Defendants' facilities.  (Attached as Exhibit C).

11.     On or about April 28, 2000, counsel for Advocacy faxed and mailed a written a letter to Mr. Williams detailing Advocacy's authority under federal statutory and case law to obtain the records of Mr. Sawin; providing him with documentation of information he requested; and again requesting access to the records of Robert Sawin by May 3, 2000. (Attached as Exhibit D).

12.     On or about May 4, 2000, Mr. Williams faxed another letter to Advocacy again refusing to release Mr. Sawin's records.  The refusal was based mainly on the fact that Advocacy did not have a signed medical record release authorization form.

13.     On or about May 9, 2000, counsel for Advocacy had a telephone conversation with Mr. Williams.  During that conversation, Advocacy again attempted to address the concerns raised by the Defendants.  Advocacy informed Mr. Williams that under the PAIMI Act, 42 U.S.C. §10805(a)(4)(B), Advocacy is entitled to Mr. Sawin's records without a signed medical record release.   At the conclusion of the telephone conversation, Mr. Williams stated that he would review the statutory and case law that was provided to him during the telephone conversation and then speak to his clients to determine if they would be willing to release Mr. Sawin's records to Advocacy.

14.     When Advocacy did not hear from Mr. Williams for approximately a month, Advocacy, on June 6, 2000, sent another letter to Mr. Williams.  In this letter Advocacy again explained its authority to obtain the records of Mr. Sawin and requested a response from Mr. Williams by June 14, 2000. (Attached as Exhibit E).

15.     Although Advocacy had provided Mr. Williams with Advocacy's statutory and regulatory authority as well as case law that supported its proposition, on June 15, 2000 Mr. Williams faxed another letter to Advocacy again refusing to release Mr. Sawin's records. The refusal was again based mainly on the fact that Advocacy did not have a signed medical record release authorization form and had not provided the HCFA complaint to the Defendants. (Attached as Exhibit F).

16.     Advocacy, Inc. did not follow up on its request for the records for a number of months because it did not have a managing attorney in its North Texas office.   When Laurance L. Priddy became managing attorney, he wrote Mr. Williams on December 11, 2000, providing further authority and documentation, including the HCFA complaint,  and again requested the records. (Letter attached as Exhibit G).

17.     Mr. Williams acknowledged receipt of the letter with correspondence dated December 15, 2000,  and requested an extension of time to reply until after January 1, 2001. (Attached as Exhibit H).

18.     Laurance L. Priddy responded with a letter extending the time until January 10, 2001, and indicating he would need to file suit after that time.  (Attached as Exhibit I)

19.     On or about January 9, 2001, Mr. Williams called, indicating he still was not satisfied with the documentation and authorities provided.  He stated his office did not respond to ultimatums and requested a conference call to discuss the matter.  Because Priddy felt Advocacy had provided ample documentation and authorities, he declined to delay further and told Mr. Williams this litigation would be instituted.

20.     Under the above-described circumstances, the Defendants have acted individually and collectively in their official capacities to create and maintain a system that hampers the Congressionally-mandated function and duties of Advocacy at JPSH. Prior to commencing this action, Plaintiffs made several attempts to resolve the access problem present at JPSH. However, Defendants continue to deny and/or delay Advocacy's access to the records of Mr. Sawin.

## V.  CAUSES OF ACTION

21. Plaintiff restates and incorporates herein by reference each of the allegations contained in Paragraphs 1-17 hereof.

22. The policy and actions of the Defendants, acting under color of law, violate the right of Plaintiff to meaningful and timely access to the records of Robert Sawin, an individual who died at John Peter Smith Hospital, in violation of the Protection and Advocacy for Mentally Ill Individuals Act of 1991, 42 U.S.C. § 10801, *et seq.*, and Defendants' policy and actions, unless enjoined, will violate Advocacy's right to that information in the event of future deaths at John Peter Smith Hospital.

23.    The policy and actions of Defendants violated the right of Advocacy to meaningful and timely access to the name, address and telephone number of Robert Sawin's parents, guardians or the representatives of his estate in violation of 42 U.S.C. § 10801, *et seq.*, and 42 C.F.R. § 51.43, and the policy, unless enjoined, will violate Advocacy's right to that information in the event of future deaths at JPSH.

24. Plaintiff seeks declaratory and injunctive relief, and attorney fees, against Defendant JPSH and Anthony Alcini in his official capacity, for the actions described above, done under color of law and the authority of the State of Texas. The Civil Rights Act of 1871, 42 U.S.C. §1983, provides relief for persons who, under color of state law, have been deprived of any rights, privileges or immunities secured by federal law.

## VI. INJUNCTIVE RELIEF

25. Plaintiff requests that, after notice and hearing, the Court enjoin Defendants from denying Advocacy immediate access to the records of individuals who have died at facilities operated by Defendants if a complaint is received and/or probable cause exists to believe that abuse or neglect occurred.

## VII. DECLARATORY RELIEF

26. Plaintiff requests that after notice and hearing, this Court enter a declaratory judgment that the Defendants' policies, regulations, and practices of denying Advocacy immediate access to the records of individuals who have died at John Peter Smith Hospital when a complaint has been received and/or probable cause exists to believe that abuse or neglect has occurred, violate the Protection and Advocacy for Mentally Ill Individuals Act of 1991, 42 U.S.C. § 10801 *et seq*.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(A)   Enter an injunction enjoining Defendants, their agents or employees from denying Advocacy immediate access to the records of individuals who die at John Peter Smith Hospital, when a complaint has been received and/or probable cause exists to believe that abuse or neglect has occurred;

(B)   Enter a declaratory judgment that the Defendants' policies, regulations, and practices of denying Advocacy immediate access to the records of individuals who have died at facilities operated by Defendants for whom Advocacy has either received a complaint and/or has probable cause to believe the individual has been abused or neglected, violates the Protection and Advocacy for Mentally Ill Individuals Act of 1991, 42 U.S.C. § 10801 *et seq.*;

(C)   Award attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

(D)   Award such other and further relief to which Plaintiff is justly entitled, at law or equity..

Respectfully submitted,

LAURANCE L. PRIDDY
State Bar No. 16323000
ADVOCACY, INCORPORATED
1420 West Mockingbird Lane, #450
Dallas, Texas 75247-4932
214-630-0916 (Phone)
214-630-3472 (Fax)

BETH MITCHELL
State Bar No. 00784613
ADVOCACY, INCORPORATED
7800 Shoal Creek Boulevard, Suite 171-E

Austin, Texas 78757-1024
(512) 454-4816 (Phone)
(512) 323-0902 (Fax)
ATTORNEYS FOR PLAINTIFF



DEPARTMENT OF HEALTH & HUMAN SERVICES
**Health Care Financing Administration**

Region VI
1301 Young Street, Room 827
Dallas, Texas 75202

March 23, 2000

CAP/PADD/PAIMI/PAIR
Advocacy, Inc.
7800 Shoal Creek Blvd., Suite 171-E
Austin, Texas 78757

To whom it may concern:

Our Central Office has asked us to give you the following information [collected under the authority of 42 CFR 482.13(f)(7) copy enclosed] regarding reports from hospitals on patient deaths that occurred while a patient was restrained or in seclusion, or where it was reasonable to assume that a patient's death was a result of restraint or seclusion. In future, we will report this information to you as we receive it.

We wish to report the following:

1) Big Spring State Hospital
   1901 North Highway 87
   Big Spring, Texas 79720
   Patient's Name: Laurence Habel
   Date of Death: 11/24/99

2) John Peter Smith Hospital
   1500 South Main St.
   Fort Worth, Texas 76104
   Patient's Name: Robert Sawin
   Date of Death: 09/14/99

3) Terrell State Hospital
   1200 East Brin St.
   Terrell, Texas 75160
   Patient's Name: Macie Stafford
   Date of Death: 12/10/99

If you have questions, please call Molly Crawshaw of my staff at (214) 767-2091.

Sincerely,

Calvin Cline

Calvin Cline
Associate Regional Administrator
Division of Medicaid and State Operations

*Exhibit A*

*Advocating the Legal Rights of Texans with Disabilities*
*Implementing the Client Assistance Program for Rehabilitation Clients*

**ADVOCACY, INCORPORATED**

**1420 West Mockingbird Lane, #450, Dallas, Texas 75247-4932**
**214-630-0916, 1-800-880-2884 (Voice/TDD)**
**214-630-3472 (Fax) • http://www.advocacyinc.org**
*EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER*

SATELLITE OFFICE
1310 South Collard, Suite 233, Fort Worth, Texas 76105-1698
817-534-6996, 1-800-880-2454 (Voice/TDD) • 817-534-6560 (Fax)

April 17, 2000

**Via Facsimile Transmittal at 817-927-3661**
**&U. S. P. S. Certified and Return Receipt Requested**
**Article Nº P 502 024 875**

Mr. Allan Smith
Custodian of records
John Peter Smith Hospital
1500 S. Main
Fort Worth, TX 76104

**RE: Robert Sawin, Date of the death, 09/14/1999**

Dear Mr. Smith

Advocacy, Inc. is the federally designated Protection and Advocacy System in Texas for people with mental illness. Pursuant to federal and state law, we are entitled to receive copies of records of an individual residing at your facility when we have received a report that the individual has been abused or neglected or when we have probable cause to believe the individual has been abused or neglected.

We have received a report of abuse or neglect of Mr. Robert Sawin and we have probable cause to believe that Robert Sawin has been abused or neglected.

Please let me know of a suitable time, at your earliest convenience, but no later than May 1, 2000, when I can come to review the records for the client of reference. We request to review any and all records for this client including but not limited to any and all substance abuse and/or mental health treatment records.

Please contact me if you have any questions. We may need to copy these records for our file. If there is a charge for copying these records, please give me a detailed estimate of the cost of obtaining a copy of the file. Advocacy, Inc. is a non-profit organization.

Sincerely,

Exhibit B

Nestor J. Presas
Community Specialist
Advocacy Incorporated of North Texas





APR 2 7 2000

# TARRANT COUNTY
### OFFICE OF THE
### CRIMINAL DISTRICT ATTORNEY

TIM CURRY
CRIMINAL DISTRICT ATTORNEY

April 26, 2000

HOSPITAL DISTRICT OFFICE
1025 SOUTH JENNINGS - SUITE 300
FORT WORTH, TEXAS 76104
(817) 927-1465

METRO (817) 429-5156 - EXT. 5098
FAX     (817) 338-4070

Mr. Nestor J. Presas
Community Specialist
Advocacy Inc., of North Texas
1420 West Mocking Bird Lane, Suite 450
Dallas, Texas 75247-4932

*Via CM RRR NO. Z 255 633 942*

**RE:   Robert Sawin**

Dear Mr. Presas:

Our office represents the Tarrant County Hospital District d/b/a John Peter Smith Hospital and is in receipt of your letter dated April 17, 2000. Please refrain making any contact with the hospital or its personnel regarding this matter. Any request for information or other contact with the hospital should be made through this office and directed to my attention.

I am not an employee or officer of the Hospital District. The Hospital District's records are not subject to my control.

The hospital denies your allegation that Mr. Sawin was abused or neglected while he was a patient in the Tarrant County Hospital District. In fact, the Texas Department of Health has issued a report stating that Mr. Sawin was neither abused nor neglected while he was a patient in the Tarrant County Hospital District.

Your letter states that "Advocacy, Inc., is the federally designated Protection and Advocacy System in Texas for people with mental illness." Please provide the federal or state laws that make "Advocacy, Inc., the federally designated Protection Advocacy System in Texas." Furthermore, we request that you provide the federal or state law that gives Advocacy Inc., the authority to review medical records. Finally, please offer some explanation of whose interest Advocacy, Inc., represents.

Thank you for your cooperation.

Very truly yours,
TIM CURRY
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

J.O. Khayan Williams
Assistant District Attorney
ATTORNEY FOR THE TARRANT COUNTY
HOSPITAL DISTRICT

*Exhibit C*

April 28, 2000

J.O. Khayan Williams
Assistant District Attorney, Tarrant County, Texas
Hospital District Office
1025 South Jennings-Suite 300
Fort Worth Texas 76104

Fax: 817-338-4070

      Re:    Robert Sawin

Dear Mr. Williams,

This letter is in response to your letter dated April 26, 2000 and received by Nestor Presas.   As you requested I have indicated below the Federal Statute and case law that supports our position that we be **immediately** provided with the records of Mr. Sawin.  I have also included a letter stating that Advocacy, Inc. is the designated Protection and Advocacy for Texas.

The law is clear that Advocacy, Inc., as the Protection and Advocacy system for the State of Texas as authorized under the Protection and Advocacy for Mentally Ill Individuals Act ("the PAMI Act"), 42 USC §10801 et.seq., is entitled to access records of deceased individuals, regardless of whether the deceased had a guardian, when there is a complaint or probable cause to believe that such individual has been subject to abuse or neglect.

The statute specifically provides that the P&A shall have access to all records of any individual (including an individual who has died or whose whereabouts are unknown)--

        (i)     who, by reason of the mental or physical condition of such individual, is unable to authorize the system to have such access;

        (ii)     who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

        (iii)     with respect to whom a complaint has been received by the agency or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been

*Exhibit D*

subject to abuse or neglect[.]  42 USC 10805(a)(4)(B).

Advocacy meets the first requirement as the individual in question--the child--died while residing at John Peter Smith Hospital.

As for the Acts second requirement <u>Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center</u>, 894 F.Supp. 424 (M.D. Ala. 1995),  found that deceased persons, in effect, have no legal guardian, conservator or other legal representative -- if, under state law, that relationship terminates at death.  Under Texas law, Probate Code §§ 694 & 745, a guardianship does terminate at death.  Therefore, AI does not need to obtain consent from the guardian of a deceased individual.

As for the Act's third requirement, that a complaint has been received or, alternatively, that there is probable cause to believe that the individual has been subject to abuse or neglect, there can be little dispute that Advocacy has met this requirement under the facts of this case. The fact that a the individual died while at John Peter Smith Hospital certainly gives probable cause to believe that abuse or neglect has occurred.  Further, in this instance Advocacy, Inc. received a complaint from the Health Care Financing Administration stating that Mr. Smith had died in your facility, clearly meeting the requirement that Advocacy received a complaint.

Therefore, Advocacy, Inc. is renewing its request that John Peter Smith Hospital **immediately** release the records of Mr. Sawin, including the records pertaining to his death.  Failure to release the records by Wednesday, May 3, 2000 will leave me no recourse but to file a lawsuit against the Tarrant County Hospital District to obtain the records and recover costs.

Thank you for your attention to this matter.  I await your immediate response.

Sincerely,


Beth Mitchell
Attorney at Law

cc:     Nestor Presas



Advocating the Legal Rights of Texans with Disabilities
Implementing the Client Assistance Program for Rehabilitation Clients

**ADVOCACY, INCORPORATED**

7800 Shoal Creek Boulevard, #171-E, Austin, Texas 78757-1024
512-454-4816, 1-800-252-9108 (Voice/TDD)
512-323-0902 (Fax)• http://www.advocacyinc.org
*EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER*

REGIONAL OFFICES

EAST TX - 7457 Harwin Drive, Suite 100, Houston, TX 77036-2017
713-974-7691, 1-800-880-0821 (Voice/TDD) • 713-974-7695 (Fax)

SOUTH TX - 504-A East Dove Avenue, McAllen, TX 78504-2241
956-630-3013, 1-800-880-8401 (Voice/TDD) • 956-630-3445 (Fax)

NORTH TX - 1420 West Mockingbird Lane, Suite 450, Dallas, TX 75247-4932
214-630-0916, 1-800-880-2884 (Voice/TDD) • 214-630-3472 (Fax)

WEST TX - 1001 Main Street, Suite 200, Lubbock, TX 79401-3300
806-765-7794, 1-800-880-4456 (Voice/TDD) • 806-765-0496 (Fax)

CENTRAL TX - 7800 Shoal Creek Blvd., Suite 142-S, Austin, TX 78757-1024
512-454-4816, 1-800-315-3876 (Voice/TDD) • 512-302-4936 (Fax)

June 6, 2000

Via Facsimile No. 817-338-4070
and
Certified Mail No. Z 277 486 937
Return Receipt Requested

RECEIVED
JUN 1 3 2000

Mr. J. O. Khayan Williams
Assistant District Attorney
Office of the Criminal District Attorney
Hospital District Office
1025 South Jennings, Suite 300
Fort Worth, Texas 76104

Re:    Robert Sawin

Dear Mr. Williams,

Approximately one month ago, on May 9, 2000, I spoke to you regarding the additional concerns that you raised regarding the release of Robert Sawin's records to Advocacy, Incorporated. At the conclusion of that conversation you informed me that you would review the information that I provided you during the phone conversation and that you would speak to the individuals that you represent to determine if your clients would be willing to release the records to Advocacy, Incorporated ("Advocacy"). I have yet to hear from you with regard to this matter. It is imperative that I receive an immediate response as to whether your clients will or will not release the records to Advocacy. In order to facilitate a response and again address the issues raised in your letter dated May 4, 2000, I have provided the below information.

To address your first concern, and as previously stated during our conversation, Advocacy is requesting records of a deceased adult male named Robert Sawin. I am sorry for any confusion in my previous letter with regard to this individual.

*Exhibit E*

J. O. Khayan Williams                           - 2 -                           June 6, 2000

Although I believe that my previous letter and our conversation addressed the issue of when Advocacy is entitled to the release of medical records without a signed release, I will again explain the authority that gives Advocacy this right. Advocacy is the Protection and Advocacy system for the State of Texas. (I previously provided you with the governor's assurances as to this fact). Accordingly, Advocacy is required under the Protection and Advocacy for Mentally Ill Individuals Act ("the PAIMI Act"), 42 U.S.C. § 10801 *et.seq.*, to protect and advocate for the rights of persons with mental illnesses. The PAIMI Act contains a section that allows Advocacy access to records. Within that section is a section that dictates when Advocacy is entitled to access records of deceased individuals.

This section specifically provides that the P&A shall have access to all records of any individual (including an individual who has died or whose whereabouts are unknown)--

> (i)     who, by reason of the mental or physical condition of such individual, is unable to authorize the system to have such access;
>
> (ii)    who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
>
> (iii)   with respect to whom a complaint has been received by the agency or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect[.]

42 U.S.C. § 10805(a)(4)(B).

This section does not require a release of authorization as do the other sections regarding access to records. The obvious reason that 42 U.S.C. § 10805(a)(4)(B)--the section from which Advocacy is requesting records--does not require a release of authorization is because the individual is dead and therefore is unable to give such a release.

Further, it is not appropriate for the guardian to give such authorization because, as I stated in my previous letter, a guardianship terminates upon the death of an individual under Texas Law, Probate Code §§ 694 & 745.

Again, *Tarwater* is directly on point with this issue. *Tarwater* stated that "death clearly is a physical condition that renders both G.A. and M.V. unable to authorize record access," 97 F3d 492, 497 n2. *Tarwater* also found that deceased persons, in effect, have no legal guardian, conservator or other legal representative -- if, under state law, that relationship

J. O. Khayan Williams                        - 3 -                        June 6, 2000

terminates at death. *Id.* at 497. Therefore, Advocacy does not need to obtain consent from the guardian of a deceased individual.

With regard to your requirement that Advocacy would need the release of authorization by a representative of the estate, *Tarwater* and the regulation implementing the PAIMI Act addresses this issue. In *Tarwater* the court required the Defendants (the Department of Mental Health and Mental Retardation) to bring forward any evidence that there was a personal representative of the estate appointed by the probate court. Since the Defendants did not have any evidence of a representative of the estate, the court concluded that authorization was not needed. Additionally, the legislative history of the PAIMI Act clarifies the meaning of the terms "legal guardian, conservator and legal representative." The House report accompanying the original House bill states that "legal guardian, conservator and legal representative,"

> are intended to mean individuals [sic] appointed and regularly reviewed by a State court or agency empowered under State law to appoint and review such officers. The Committee intends the terms to include only those individuals who are given authority necessary to make all decisions on behalf of a mentally ill person and **does not** intend the terms to include persons acting only as a representative payee, persons acting only to handle financial payments, attorneys or persons acting on behalf of a mentally ill person only in individual legal matters, or officials responsible for the provisions of health services to a mentally ill person.

H. Rep. 901, 99th Cong., 1st Sess. 7 (1985) (emphasis added).

It was not Congress' intent to require the consent of a personal representative before the records of a deceased person may be released to the P & A. A personal representative is only appointed for the limited purpose of administering a decedent's estate during a probate proceeding. As Congress stated, a legal representative is not someone who is appointed for individual legal matters. Additionally the regulations implementing the PAIMI Act specifically state that representative payees, persons appointed during probate proceedings as administrator or executor of the estate is not included in the definition of "legal guardian, conservator and legal representative." 42 CFR 51.2 & 42 Fed Reg. 53552.

As for the Act's third requirement, that a complaint has been received or, alternatively, that there is probable cause to believe that the individual has been subject to abuse or neglect, there can be little dispute that Advocacy has met this requirement under the facts of this case. The fact that the individual died while at John Peter Smith Hospital certainly gives probable cause to believe that abuse or neglect has occurred. Further, in this instance, Advocacy

J. O. Khayan Williams                    - 4 -                    June 6, 2000

received a complaint from the Health Care Financing Administration stating that Mr. Sawin had died in your facility, clearly meeting the requirement that Advocacy received a complaint.

Because there have been extensive delays in providing the records to Advocacy, I expect a response no later than June 14, 2000.  Failure to release the records or provide assurances that the records will be released to Advocacy by this date will leave me no recourse but to file a lawsuit against the Tarrant County Hospital District to obtain the records and recover costs.

Thank you for your attention to this matter.  I await your immediate response.

Sincerely,

Beth Mitchell
Attorney at Law

cc:    Nestor Presas







## TARRANT COUNTY
### OFFICE OF THE
### CRIMINAL DISTRICT ATTORNEY

TIM CURRY
CRIMINAL DISTRICT ATTORNEY

June 15, 2000

HOSPITAL DISTRICT OFFICE
1025 SOUTH JENNINGS - SUITE 300
FORT WORTH, TEXAS 76104
(817) 927-1465

METRO (817) 429-5156 - EXT. 5098
FAX    (817) 338-4070

Ms. Beth Mitchell
General Counsel
Advocacy Inc., of North Texas
1420 West Mocking Bird Lane, Suite 450
Dallas, Texas 75247-4932          *VIA FAX & CM RRR NO.* Z56 548 991

RE:   Robert Sawin

Dear Ms. Mitchell:

This letter is in response to your letter dated June 6, 2000. The aforementioned letter incorrectly recalls our conversation on May 9, 2000. I respectfully regret that you have misunderstood what was stated during our May 9, 2000, telephone conversation. At the time of the said telephone conversation Advocacy Inc., had not clarified the name of the patient's medical records that it was requesting, or the authority of Advocacy Inc., to request medical records without a signed release. I did state I would speak to my client regarding your request and concerns. However, we never agreed that I was going to contact you regarding my client's decision to release any medical records. As I recall, I informed you that Advocacy Inc., had not made clear to the District the name, age and status of the person whose medical records it is demanding. Furthermore, I stated to you that the District has a statutory duty to continue to protect the confidentiality and privacy of a patient's medical records. Consequently, I assured you that the District's intent was to comply with all aspects of the law and it is for that reason why we needed to verify the authority of Advocacy Inc., to demand medical records without a signed release. Furthermore, I requested in writing that you provide your client's authority to demand medical records and that you also provide a copy of the HCFA complaint that is the source of your demands.

To date Advocacy Inc., has clarified the name of the individual whose records it is seeking. However, Advocacy Inc., still has not shown its authority under Texas or federal law to request the medical records without a signed release by a representative of the estate. Furthermore, Advocacy Inc., has not provided a copy of the aforementioned HCFA complaint to our office. The material that Advocacy Inc., has provided in its most recent letter is inconclusive and vague in determining whether or not the District should release the medical records of Mr. Robert Sawin to Advocacy Inc., without a signed release. We respectfully request that the aforementioned

*Exhibit F*

information be provided to our office.  It may also be helpful if you are able to provide the name of a HCFA official who has knowledge of the complaint and/or authority to authorize an investigation by Advocacy, Inc.

Once again the District denies your client's allegation that Mr. Smith was abused or neglected while he was being treated in the Tarrant County Hospital District.  To suggest that an in hospital death in and of itself suggests that abuse or neglect has occurred is unreasonable.

In light of our disagreement we continue to welcome the opportunity to allow Advocacy Inc., to voice its concerns.

Please feel free to contact me if I can be of any additional assistance.

Very truly yours,
TIM CURRY
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

J.O. Khayan Williams
Assistant District Attorney
ATTORNEY FOR THE TARRANT
COUNTY HOSPITAL DISTRICT

ADVOCACY,
INCORPORATED

*Advocating the Legal Rights of Texans with Disabilities*
*Implementing the Client Assistance Program for Rehabilitation Clients*

1420 West Mockingbird Lane, #450, Dallas, Texas 75247-4932
214-630-0916, 1-800-880-2884 (Voice/TDD)
214-630-3472 (Fax) • http://www.advocacyinc.org
*EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER*

SATELLITE OFFICE
801 Burnett St. Suite 108, Wichita Falls, Texas, 76301-3290
940-761-1199 • 940-761-1319 (Fax)

December 11, 2000

J. O. Khayan Williams
Tarrant County Assistant District Attorney
Hospital District Office
1025 S. Jennings, Suite 300
Fort Worth, Texas 76104

RE: Robert Sawin
    Report of death in JPS Hospital
    September 14, 1999

Dear J. O. Khayan Williams:

As the recently hired Managing Attorney for the North Texas office of Advocacy, Inc., I am responding to your letter of June 15, 2000, to Beth Mitchell in our Austin office. I also refer to all prior correspondence between you and Ms. Mitchell. The delay in response has been caused by the fact we did not have a managing attorney in this office from June until October, 2000.

In your letter of June 15, you indicated you still are not satisfied with Advocacy, Incorporated's authority to receive records from the Tarrant County Hospital District relative to the death of Robert Sawin in JPS Hospital on or about September 14, 1999.

Pursuant to the PAIMI Act, three requirements must be met by Advocacy to access the records: (1) the individual must be unable to authorize the system to have access; (2) the individual must not have a legal guardian, conservator, or other legal representative; and (3) the P&A must have received a complaint relating to the individual or have probable cause to believe there has been abuse and neglect. 42 U.S.C. § 10805(a)(4)(B).

Advocacy meets the first requirement, since Robert Sawin died while in John Peter

-1-

*Exhibit G*

J. O. Khayan Williams
December 11, 2000

Smith hospital.   The language preceding the three criteria refers to "any individual, including an individual who has died or whose whereabouts are unknown." If there was any doubt about whether a deceased individual is able to provide a release, the Eleventh Circuit resolved it in *Alabama Disabilities Advocacy Program v. J. S. Tarwater Developmental Ctr.,* 97 F.3d 494, 497 n. 2 (11th Cir.1996), stating that "[d]eath clearly is a physical condition that renders [the individual] unable to authorize record access." See also *Mississippi Protection & Advocacy System v. Cotten,* 929 F.2d 1054,1055 (5th Cir.1991).

The second requirement of the statute--that the individual not have a legal guardian, conservator, or other legal representative--is determined under state law.   The district court's decision in *Tarwater* is instructive on this issue.   The court held that a deceased person, in effect,   has no legal guardian, conservator or other legal representative if, under state law, that relationship terminates at death.   *Alabama Disabilities Advocacy Program v. J. S. Tarwater Developmental Center,* 894 F.Supp. 424, 428 (U.S.D.C., Middle Dist. Ala.,1995). On appeal, the Eleventh Circuit held that deceased individuals did not have legal representatives at the time of death, thereby allowing the P&A to access their records.   *Tarwater,* 97 F.3d at 497. The court noted that the P&A's access did not in any way weaken the role of the family or deprive the parents of any rights they might still have after. the deaths of their wards since the P&A's are required to keep all information, including information about the family, confidential.   *Ibid.*

Applying the *Tarwater* analysis to this case, we must look to Texas law to determine whether a guardian's rights terminate upon the death of the ward. Sections 694 and 745 of the Texas Probate Code, much like the analogous sections of the Alabama Code at issue in *Tarwater*, state that a guardianship terminates upon the death of the ward. The court in *Tarwater* drew no distinction between "parental rights" and a "guardian's rights," finding that the P&A's access to the records did "not deprive the parents of any rights they might still have *after the deaths of their wards." Tarwater,* 97 F.3d at 497-98 (emphasis added).   As a deceased person, Robert Sawin has no legal guardian, and Advocacy has met the second requirement of the act.

Advocacy has also met the Act's third requirement--that a complaint has been received or, alternatively, that there is probable cause to believe that the individual has been subject to abuse or neglect. Attached is a letter from Calvin Cline of the Health Care Financing Administration of the Department of Health &

-2-

J. O. Khayan Williams
December 11, 2000

Human Services, dated March 23, 2000, in which Mr. Cline identifies Mr. Sawin as a patient who died in John Peter Smith Hospital "while.....restrained or in seclusion, or where it was reasonable to assume that [his] death was a result of restraint or seclusion."

In *Tarwater*, the court stated that an anonymous message, alleging a death at a facility, which was left on a P&A's telephone answering machine, would clearly constitute both a valid "complaint" and establish probable cause, finding that "[t]he [DD] Act imposes no special requirements on the source of the complaint or for the person making it, and we agree......that no such requirements should be read into the statute." *Tarwater*, 97 F.3d 498.  See also 42 C.F.R. § 10805(a)(4)(B). With regard to Robert Sawin,  Advocacy received a report from a governmental agency  suggesting that Mr. Sawin's death was due to restraint or seclusion. Death due to restraint or seclusion would be due to abuse or neglect.  The report solidly establishes the third statutory requirement.

Since Advocacy has met all requirements for access, I request that you advise the Tarrant County Hospital District and John Peter Smith Hospital to furnish the records as previously requested.  I will appreciate your response within the next seven days, with the hope in mind that litigation will not be required.

Yours truly,

Laurance L. Priddy
Regional Managing Attorney
North Texas Region
Advocacy, Incorporated

-3-



# TARRANT COUNTY
### OFFICE OF THE
### CRIMINAL DISTRICT ATTORNEY

TIM CURRY
CRIMINAL DISTRICT ATTORNEY

December 15, 2000

HOSPITAL DISTRICT OFFICE
1025 SOUTH JENNINGS - SUITE 300
FORT WORTH, TEXAS 76104
(817) 927-1465

METRO (817) 429-5156 - EXT. 5098
FAX    (817) 338-4070

Laurance L. Priddy
Regional Managing Attorney
North Texas Region
Advocacy Inc., of North Texas
1420 West Mocking Bird Lane, Suite 450
Dallas, Texas   75247-4932

**VIA FAX & CM RRR Z 354 861 979**

**Re: Robert Sawin**

Dear Mr. Priddy:

   This letter is in response to your letter of December 11, 2000.  As requested in our letter of June 15, 2000, you included a copy of Mr. Calvin Cline's letter to Advocacy Inc. dated March 23, 2000, and you have provided additional legal information regarding your right to have access to Mr. Sawin's medical records.

   Because of Seasonal workloads and time constraints we will need additional time to responsibly consider your request. Please know that we will continue to make every effort to evaluate your request to receive copies of the medical records of Robert Sawin while he was a patient at John Peter Smith Hospital.  I anticipate that I will be able devote the time necessary to respond sometime after January 1, 2001.

   Please feel free to contact me if I can be of further assistance.

                                        Very truly yours
                                        TIM CURRY
                                        CRIMINAL DISTRICT ATTORNEY
                                        TARRANT COUNTY, TEXAS.

                                        J. O. Khayan Williams

                                        J.O. KHAYAN WILLIAMS
                                        Assistant District Attorney

                                        ATTORNEY FOR THE TARRANT
                                        COUNTY HOSPITAL DISTRICT

KW/rl

                                        Exhibit H

*Advocating the Legal Rights of Texans with Disabilities*
*Implementing the Client Assistance Program for Rehabilitation Clients*

**ADVOCACY, INCORPORATED**

1420 West Mockingbird Lane, #450, Dallas, Texas 75247-4932
214-630-0916, 1-800-880-2884 (Voice/TDD)
214-630-3472 (Fax) • http://www.advocacyinc.org
*EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER*

SATELLITE OFFICE
801 Burnett St. Suite 108, Wichita Falls, Texas, 76301-3290
940-761-1199 * 940-761-1319 (Fax)

December 19, 2000

J. O. Khayan Williams
Tarrant County Assistant District Attorney
Hospital District Office
1025 S. Jennings, Suite 300
Fort Worth, Texas 76104

RE: Robert Sawin
    Report of death in JPS Hospital
    September 14, 1999

Dear J. O. Khayan Williams:

Thanks for your letter of December 15, 2000. Please let me hear from you about this matter by January 10, 2001. I do feel I need to either receive the records soon, or institute litigation, since this agency has a statutory obligation to investigate these matters, and can't fulfill it without the records.

Yours truly,

Laurance L. Priddy
Regional Managing Attorney
North Texas Region
Advocacy, Incorporated

Exhibit I